AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
EMANI REY JUSTAVINO

Defendant(s)

Case No. 3:26-mj-1381-LLL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 18 and 19, 2026 in the county of Duval in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(o) | Illegally possessing machineguns |
| 26 U.S.C. §§ 5861(a) and (d) | Possessing firearms not registered to the owner in the National Firearms Registration and Transfer Record |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Jeffrey Davis, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 3, 2026

[signature]
*Judge's signature*

City and state: Jacksonville, Florida

Laura Lothman Lambert, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeffrey Davis, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since October 2004. I completed the Criminal Investigations Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I also completed the ATF Special Agent Basic Training National Training Academy in Brunswick, Georgia. During those courses of study, I received training in the investigation of federal firearms and explosives violations. Before becoming a SA with the ATF, I was employed as a patrol officer and an undercover vice and narcotics detective with the Howard County Police Department for approximately four years.

2. While employed as an ATF SA and as a vice and narcotics detective, I have conducted investigations involving the possession, use, and sale of narcotics and firearms. I have also participated in the undercover purchase of firearms, explosives, and narcotics. To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical surveillance, interviews, the utilization of undercover agents and informants, and the review of various databases and records. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by prohibited persons to possess, transfer, manufacture, and sell firearms, including machine guns, and narcotics.

3. I submit this affidavit in support of a criminal complaint charging Emani Rey JUSTAVINO (DOB 10/XX/2006), a resident of Jacksonville, Florida with illegally possessing machineguns and possessing firearms not registered to him in the National Firearms Registration and Transfer Record, in violation of 18 U.S.C. § 922(o), and 26 U.S.C. §§ 5861(a) and (d).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, members of law enforcement and witnesses. The affidavit is intended to merely show that there is sufficient probable cause to support the issuance of the requested complaint and does not set forth all of my knowledge about this matter, nor all facts known to investigators. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

**DEFINITIONS**

5. As used throughout this affidavit, the term "machinegun" means a firearm that shoots automatically more than one round of ammunition without manual reloading, by a single function of the trigger. The term machinegun includes any part or combination of parts designed and intended to convert a firearm into a machinegun. The term "Glock switch" means a specific part or combination of parts that are designed to convert a semiautomatic Glock pistol into a machinegun. The term drop-in auto sear means a part or combination of parts designed to convert AR-style semiautomatic firearms into machineguns. Glock switches and drop-in auto sears

are both commonly referred to as machinegun conversion devices and will be referred to as such herein (MCD).

6. Based upon my training and experience, I am aware that MCDs have are designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance, but generally, when installed on a semi-automatic Glock pistol, MCDs will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these devices is fast and simple, requires no technical expertise, and is completed by removing the original polymer slide cover plate on a Glock semi-automatic pistol and replacing it with the device. I know that the manufacturer Glock, Inc. does not manufacture, distribute, or sell these types of devices. I also know that these devices are commonly referred to by different names, including "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs). The ATF has determined that Glock machinegun conversion devices are machineguns, as such devices are "any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machinegun." *See* 26 U.S.C. § 5845(b). All such devices for use in converting a Glock pistol to fire automatically were manufactured after May 19, 1986. Therefore, apart from official military and law enforcement use, MCDs may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs) who have

paid the appropriate Special Occupational Tax (SOT) required of individuals manufacturing, importing, or dealing in National Firearms Act (NFA) weapons.

## STATUTORY AUTHORITY

7. As detailed herein, JUSTAVINO is the subject of an investigation being conducted by ATF for illegally possessing machineguns and possessing firearms not registered to him in the National Firearms Registration and Transfer Record, in violation of 18 U.S.C. § 922(o), and 26 U.S.C. §§ 5861(a) and (d). These offenses are referred to collectively herein as the "Subject Offenses." I know the following regarding federal law:

a. Title 18 United States Code, Section 922(o) provides that it is "unlawful for any person to transfer or possess a machinegun" unless the "machinegun was lawfully possessed before the date this subsection takes effect." Machinegun is defined with reference to the definition of machinegun contained in 21 U.S.C. § 5845(b) (further explicated below).

b. For purposes of 26 U.S.C. §§ 5801-72, "[t]he term 'firearm' means . . . (6) a machinegun," which is defined to include "any weapon which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" and also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(a)(6) and (b).

c. Title 26 United States Code, Section 5861(d) provides that it is unlawful for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

## PROBABLE CAUSE

8. Between August 13 and 17, 2026, ATF Taskforce Officer (TFO) Eugene Tolbert learned that an individual with the initials J.B.J., posted a story on his Instagram account "j2kreepyy," in which he advertised MCDs for sale. TFO Tolbert directed a confidential source (CS) to inquire with J.B.J. about purchasing an MCD. The CS in this case is working with law enforcement in order for a relative or associate to receive favorable consideration on pending state charge(s). The CS does not have felony criminal record. This is the first investigation the CS has taken part in.

9. Through a series of Instagram messages, the CS learned that J.B.J. was attempting to sell 3-D printed MCDs and that an unnamed associate of J.B.J. was the source making the MCDs using a 3-D printer.[1] Ultimately, J.B.J. directed the CS to contact the source directly on Instagram account "904hottshop."

10. The CS then messaged the MCD source through the Instagram account "904hottshop," and, after some back and forth messages, obtained a direct phone number of 904-XXX-9885 for the MCD source. Ultimately, the MCD source

[1] Three-dimensional (3-D) printing is also known as "Additive Manufacturing;" this is the process of making a physical, three-dimensional objects from a digital file (often stored on an SD Card or USB Thumb drive) by adding materials one thin layer at a time.

agreed to sell the CS four 3-D printed MCDs for $200. The source told the CS to "pull up" to his or her job, Gators Dockside an eatery located at 435 SR 13 North, St. Johns, FL 32259, on Tuesday, August 18, 2026. Commonly searched law enforcement databases revealed the phone number 904-699-9885 is associated with Emani Rey JUSTAVINO (DOB 10/XX/2006).

11. On August 18, 2026, ATF SA and ATF TFOs prepared for the controlled purchase of four MCDs from JUSTAVIO at the previously mentioned Gators Dockside restaurant. TFO Tolbert provided $200 of agent cashier funds to the CS. An ATF SA who was acting in an undercover capacity, and the CS were equipped with electronic surveillance equipment (ES) which recorded and broadcasted the events in real time to surveillance units. At approximately 4:15 p.m., ATF SA Calhoun conducted surveillance at a location on Malibu Way North in Jacksonville, FL (Target Location). At approximately 5:15 p.m., JUSTAVINO was observed leaving the Target Location and entering into a grey Ford Escape along with a second male. The Ford Escape then travelled to Gators Dockside, parked behind the restaurant, and the occupants entered the business. ATF SAs and TFOs maintained surveillance at Gators Dockside.

12. At approximately 6:36 p.m., the UC and the CS activated the ES and travelled to Gator Dockside. The CS sent JUSTAVINO a text at phone number 904-XXX-9885 stating, "6 min out," to which JUSTAVINO responded "fuck." The CS responded "wym," which I know to be common vernacular for "what do you mean," and JUSTAVINO responded "I'm calling my roommate[.]" The CS then sent the

message "lmk," which I know to be common vernacular for "let me know." The UC and the CS proceeded to Gators Dockside. At approximately 6:41 p.m., the UC vehicle pulled into the parking lot of Gators Dockside, drove around back, and made contact with met with JUSTAVINO. JUSTAVINO told the UC and the CS that he did not have the MCDs with him, and that he would make arrangements with his roommate "Ray" for the UC and the CS to pick the MCDs up at the Target Location. JUSTAVINO later sent a text to the CS directing the UC and the CS to travel to the Target Location. JUSTAVINO also sent the CS a contact for "Ray" with a phone number, accompanied by a text message which read, "text bro." JUSTAVINO also messaged the CS confirming that the MCDs would cost $200.

13. At approximately 6:52 p.m., the UC and the CS departed Gators Dockside, enroute to Target Location, as directed by JUSTAVINO. Members of law enforcement continuously surveilled the UC's vehicle, while a different team of investigators set up outside the Target Location ahead of the UC vehicle's arrival. At approximately 7:05 p.m., the UC vehicle arrived at the Target Location, and the CS contacted "Ray" at the phone number provided by JUSTAVINO as the phone number of his roommate.

14. Law enforcement then saw a white male leaving the Target Location and approaching the UC vehicle on the driver's side. The white male handed the CS a clear plastic case containing four 3-D printed MCDs. The CS then handed the male $200 in agent cashier funds. The UC tried to talk to the white male about future purchases; however, the male just directed the UC back to JUSTAVINO.

At approximately 7:07 p.m., the UC vehicle left the area, and the ES was turned off at approximately 7:10 p.m.



*Photograph A. MCDs purchased on August 18, 2026.*

15. On August 19, 2026, a different ATF UC called JUSTAVINO at 904-XXX-9885. During the call, JUSTAVINO agreed to meet with the UC for an additional purchase. JUSTAVINO advised that he had printed 50 MCDs the previous night and was out of material due to all the printing. JUSTAVINO advised he had eight MCDs available for purchase. The UC told JUSTAVINO that he would meet with JUSTAVINO around noon to complete the transaction. Based on my training and experience, I know that MCDs can be printed using a 3-D printer. Specifically, I know that some MCDs are manufactured with a CNC machine and are metal; these are printed with a 3-D printer. I have probable cause, based on the fact JUSTAVINO

stated to the UC he was printing the 50 MCDs the previous night, that he is manufacturing the MCDs at the Target Location.

16. On August 19, 2026, the UC was equipped with ES, which recorded and broadcast events in real time to surveillance units. At approximately 1:04 p.m. The UC travelled to the 11000 Block of North Malibu Way, Jacksonville, FL, which is near the Target Location. Upon arrival, the UC called JUSTAVINO at phone number 904-XXX-9885 and told JUSTAVINO that he had arrived. The UC then asked JUSTAVINO how many MCDs were available and offered to purchase 16 MCDs. JUSTAVINO then stated that he would be coming to meet the UC momentarily. ATF SAs and TFOs conducting surveillance in the area subsequently observed JUSTAVINO exit the Target Location wearing black pants, a black shirt, and skull cap.

Law enforcement then saw JUSTAVINO walking to the UC vehicle and entering the back seat. JUSTAVINO greeted the UC and presented him with a tan color Glock model 19 that JUSTAVINO indicated he was attempting to sell for $1,000. The UC tried to barter with JUSTAVINO for said firearm, but JUSTAVINO ultimately said he would keep the firearm for himself. JUSTAVINO then handed the UC a toaster pastry box that contained 50 MCDs. The UC attempted to count out 16 MCDs for $400, as planned. JUSTAVINO, however, stated that he would sell all 50 MCDs for $300. The UC agreed and paid JUSTAVINO $300 in agent cashier funds for the MCDs. After the exchange was complete, the UC began asking JUSTAVINO about metal MCDs. JUSTAVINO stated that he had ordered metal MCDs, and they

were set to arrive in approximately five to seven days. The UC also discussed purchasing a suspected fully automatic rifle, but JUSTAVINO stated that there was an issue with the firing pin. After this interaction, JUSTAVINO was observed walking back to the Target Location in possession of the funds used to conduct this controlled purchase. It should further be noted that JUSTAVINO throughout text communications did advise that printing these items took all of "his" material, which indicates suggests to me that he owns a 3-D printer and associated materials and keeps the same at his residence (Target Location).



*Photograph B. MCDs purchased on August 19, 2026.*



*Photograph C. MCDs purchased August 19, 2026.*

17. On August 19, 2026, I contacted Firearms Enforcement Officer Gardner Oslyn from the ATF Firearms Ammunition and Technology Division (FATD) regarding the MCDs purchased from JUSTAVINO on August 19, 2026. Officer Oslyn analyzed photos B and C above and determined that the devices appear to be designed and intended for use in converting a weapon into a machinegun; therefore, the exhibits are a "machinegun" as defined in 26 U.S.C. § 5845(b). Being a machinegun, the devices from the August 19, 2026, controlled purchases from JUSTAVINO are also "firearms" as defined in 26 U.S.C. § 5845(a)(6). The devices are also "machineguns" as defined in 18 U.S.C. § 921(a)(23). Further, the devices bear no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842.

18. On August 24, 2026, ATF SA Richard Connors contacted Firearms Enforcement Officer Leonard Reloza from FATD regarding the four MCDs

purchased from JUSTAVINO on August 18, 2026. Officer Reloza analyzed photo A and determined the four devices appear to be designed and intended for use in converting a weapon into a machinegun; therefore, the exhibits are a "machinegun" as defined in 26 U.S.C. § 5845(b). Being a machinegun, the devices from the August 18, 2026 controlled purchases are also "firearms" as defined in 26 U.S.C. § 5845(a)(6). The devices are also a "machinegun" as defined in 18 U.S.C. § 921(a)(23). Further, the devices bear no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842.

19. On August 24, 2026, I contacted ATF Industry Operations Investigator (IOI) Josue Cedeno, who conducted a query of the ATF National Firearms Registration and Transfer Record (NFRTR). He reported that the MCDs were not properly registered because they had no markings and were not serialized. Additionally, IOI Cedeno queried JUSTAVINO by name and by date of birth in the NFRTR, which produced negative results, indicating that JUSTAVINO has no machineguns registered to him. Under 26 U.S.C. § 5861(d), all machineguns must be registered to an individual in the NFRTR in order for their possession by that individual to be legal.

20. Based on the information detailed above, I respectfully submit that there is probable cause to believe that, on or about August 18 and 19, 2026, in the Middle District of Florida, Emani Rey JUSTAVINO illegally possessed machineguns and

firearms not registered to him in the National Firearms Registration and Transfer Record, in violation of 18 U.S.C. § 922(o), and 26 U.S.C. §§ 5861(a) and (d).

Respectfully submitted,

Jeffrey Davis
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn before me this 3rd day of ~~August,~~ September, 2026 in Jacksonville, Florida.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge